**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
      Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

**ROBERT EMERY,**

      **PLAINTIFF,**

  v.

**OREGON DEPARTMENT OF CORRECTIONS**, an agency of the State of Oregon; **JOE BUGHER; CHRISTY HUTSON; MARK NOOTH; TROY BOWSER; RICHARD POWELSON; PATRICK MCDONOUGH; RICHARD YOUNG; KEVIN JACKSON; CAL HARRIS; ANNETTE HOUSTON; MICHAEL ANDREWS-SCHRANZ; CYNTHIA DIETER; DOROTHY WETTLAUFER; SHANNON JOHNSTON;** and **ARNELL EYNON,**

      **DEFENDANTS**.

Case No. 2:19-cv-01070-MC

**FIRST AMENDED COMPLAINT**

PAGE 1 – FIRST AMENDED COMPLAINT

**Law Offices of Daniel Snyder**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

# I. INTRODUCTION

1. This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and attorney fees and costs, to redress violations of violation of the United States Constitution, including First, Eighth, Fourteenth Amendments; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985; the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 *e*t seq.; and Section 504 of the Rehabilitation Act of 1973.

2. This is a lawsuit based on the willful and deliberate refusal of the Defendants to comply with federal laws protecting the right of the Plaintiff, who has serious mental illness (SMI), and is in the custody of Defendant.

3. Through their policies and practices, Defendants discriminate against individuals with mental illness in their custody.

# II. JURISDICTION & VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (Federal Question).

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), because the claim or a substantial part of the events giving rise to the claims herein occurred or arose in this Judicial District.

# III. PARTIES

6. Plaintiff Robert Lee Emery, Jr. is a citizen of the United States of America. At the time of filing of this action, Plaintiff has standing as he is in custody of the Oregon Department of Corrections (ODOC) at Two Rivers Correctional Institution (TRCI). At all relevant times, Plaintiff has been a resident if Umatilla County, Oregon, and an adult in custody (AIC) at TRCI.

7. The individually named Defendants were at relevant times employees of ODOC at all times relevant to this complaint. At all times relevant herein each Defendant acted under color of state law and within the course and scope of their employment. Each Defendant is sued individually and in his or her official capacity.

8. Defendant ODOC is an agency of the State of Oregon and operates all prisons in Oregon including TRCI. TRCI and ODOC receive federal funding.

9. Defendant Mark Nooth was at all times relevant the Eastside Institutions Administrator for ODOC.

10. Defendant Christy Hutson was at all times relevant herein the Behavioral Health Services (BHS) Administrator, for ODOC.

11. Defendant Joe Bugher was at all times relevant herein the Health Services Administrator of ODOC.

12. Defendant Troy Bowser was at all times relevant herein the Superintendent of TRCI.

13. Defendant Richard Powelson was at all times relevant herein the BHS Manager of TRCI.

14. Defendant Patrick McDonough was at all times relevant herein a Correctional Officer (C/O) at TRCI.

15. Defendant Richard Young was at all times relevant herein a Lieutenant at TRCI.

16. Defendant Kevin Jackson was at all times relevant herein Assistant Superintendent Security at TRCI.

17. Defendant Cal Harris was at all times relevant herein Administrative Lieutenant at TRCI.

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

18. Defendant Michael Andrews-Schranz was at all times relevant herein a correctional officer at TRCI.

19. Defendant Annette Houston was at all times relevant herein Lieutenant at TRCI.

20. Defendant Cynthia Dieter was at all times relevant herein a Registered Nurse (RN) at TRCI.

21. Defendant Dorothy Wettlaufer was at all times relevant herein Medical Services Administrator TRCI.

22. Defendant Shannon Johnston was at all times relevant herein Medical Services Manager at TRCI.

23. Defendant Arnell Eynon was at all times relevant herein, Grievance Coordinator at TRCI.

### IV. GENERAL FACTUAL ALLEGATIONS

24. Plaintiff suffers from severe mental illness (SMI). Plaintiff has been diagnosed with Major Depressive Disorder (MDD), Suicidal Ideation, unspecified Personality Disorder, and Attention Deficit Hyperactivity Disorder (ADHD). Plaintiff's SMI negatively affects his everyday life and causes him difficulties in managing his activities of daily living. Plaintiff has attempted suicide on numerous occasions while in ODOC custody.

25. On or about July 14, 2010 Plaintiff was placed in the Behavioral Health Unit (BHU) at the Oregon State Penitentiary (OSP) because of his SMI, following a suicide attempt.

26. On or about January 21, 2015 Plaintiff was transferred from OSP to TRCI and immediately placed in the Mental Health Unit (MHU) where he currently resides.

27. While incarcerated at TRCI, Plaintiff has suffered abuse, retaliation, and improper treatment from TRCI staff, including failure to treat and properly diagnose his SMI, improper

discipline against Plaintiff for manifestations of his SMI, and failing to properly address Plaintiff's crisis episodes.

28. On or about April 25, 2018, Defendant McDonough engaged in hostile and confrontational demeanor toward Plaintiff, triggering an SMI crisis in Plaintiff. Shortly thereafter, Plaintiff approached Defendant McDonough in the control booth and notified him that Plaintiff required his prescribed "as-needed" (PRN) anxiety medication.

29. Defendant McDonough initially allowed Plaintiff to go to the medication line, but once Plaintiff arrived in the medication line, he realized it was too early for him to receive his next dose of PRN medication. Still in crisis and panicked over his inability to access his medication, Plaintiff returned to his cell and attempted suicide by cutting both arms from wrist to elbow.

30. Plaintiff's April 25, 2018 suicide attempt caused a significant amount of blood to pool in Plaintiff's cell, in addition to covering Plaintiff's body. Immediately after Plaintiff cut both of his arms, Defendant McDonough walked by while performing a "tier check," looked into Plaintiff's cell where Plaintiff and the cell were covered in blood, smirked and then walked on, ignoring the incident. About a minute later, correctional officer Brandon Williams approached Plaintiff's cell, saw the blood and called a response team. Given the volume of blood covering both Plaintiff and his cell, it is not possible Defendant McDonough could have performed the requisite check into Plaintiff's cell and failed to see the blood.

31. Upon information and belief, Williams was the assigned five-day-a-week correctional officer on the MHU, while Defendant McDonough was assigned as a relief correctional officer.

32. On or about April 26, 2018 Plaintiff filed Grievance TRCI-2018-04-158 against Defendant McDonough in connection with Plaintiff's April 25, 2018 suicide attempt and the events

that preceded Plaintiff's suicide attempt.

33. On or about May 24, 2018, Defendant McDonough responded to Grievance TRCI-2018-04-158 denying the allegations and denying that Plaintiff had asked for "any type of Medication" as alleged in the grievance.

34. On or about May 24, 2018 Plaintiff filed his first appeal to Grievance TRCI-2018-04-158, Grievance Appeal TRCI-2018-04-158-A.

35. On or about June 28, 2018 Defendants Jackson, Eynon, Harris, and Bowser denied Plaintiff's Grievance Appeal TRCI-2018-04-158-A.

36. On or about June 28, 2018, Plaintiff filed his second and final appeal, Grievance Appeal TRCI-2018-04-158-AA, citing Defendant McDonough's long documented history of complaints for abusing AICs, disrespectful, rude, unprofessional conduct. Plaintiff further explained that Plaintiff has never engaged in self-harm unless provoked.

37. On or about September 6, 2018, Defendant Nooth denied Grievance Appeal TRCI-2018-04-158-AA.

38. On or about April 26, 2018, Plaintiff filed Grievance TRCI-2018-04-160 against Defendant McDonough in connection to the events following Plaintiff's April 25, 2018 suicide attempt.

39. On or about May 16, 2018, Defendant McDonough and Defendant Young denied Grievance TRCI-2018-04-160 and denied seeing anything in Plaintiff's cell on April 25, 2018 other than Plaintiff pacing, and further claiming that correctional officers make eye contact when performing tier checks.

40. On or about May 16, 2018, Plaintiff filed Grievance Appeal TRCI-2018-04-160-A. In his appeal, Plaintiff noted that had Defendant McDonough made eye contact with Plaintiff

during his tier check, then the blood covering Plaintiff and his cell must have been visible to Defendant McDonough. Plaintiff further noted that though Defendant McDonough claimed that Plaintiff had "blocked the window" and Defendant McDonough was unable to see inside, Defendant McDonough contradicted his own statement by also claiming to have observed Plaintiff pacing and to have also made eye contact with Plaintiff. According to facility rules, AICs are not allowed to block the view into the AIC's cell.

41. On or about July 10, 2018, Defendant Bowser denied Grievance Appeal TRCI-2018-04-160-A.

42. On or about July 3, 2018, Plaintiff filed Grievance Appeal TRCI-2018-04-160-AA.

43. On or about August 16, 2018 Defendant Mark Nooth denied Grievance Appeal TRCI-2018-04-160-AA.

44. On or about May 4, 2018, Plaintiff filed a Grievance TRCI-2018-05-020 alleging Defendant Powelson allows "untrained" and "sadistic" correctional officers with known histories of abusing inmates to work on the MHU which is inducing suicide attempts and is a direct violation of Oregon Administrative Codes 291-048-0220 (1) thru (4): 291-048-0310 (1) thru (12) paragraph (10): 291-048-0210 (4).

45. On or about June 11, 2018, Defendants Powelson and Hutson denied Grievance TRCI-2018-05-020 stating, "I do not make staffing decisions on what C/Os are on MHU."

46. On or about June 16, 2018, Plaintiff filed Grievance Appeal TRCI-2018-05-020-A, disputing the response by Defendants Powelson and Hutson.

47. On or about August 13, 2018, Defendant Hutson denied Grievance Appeal TRCI-2018-05-020-A.

48. On or about August 16, 2018, Plaintiff filed Grievance Appeal TRCI-2018-05-020-

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

AA disputing the findings of Defendant Hutson.

49. On or about September 28, 2018, Defendant Bugher denied Grievance Appeal TRCI-2018-05-020-AA, thus refusing to take corrective action and creating a policy of inaction which encourages abuse. Defendant Bugher has never affirmed a grievance brought by an inmate.

50. On or about May 4, 2018, Plaintiff filed Grievance TRCI-2018-05-021 against Defendant Powelson for failing to provide adequate numbers of qualified mental health staff, leading to an improper delay in Mental health treatment.

51. On or about June 11, 2018, Defendants Powelson and Hutson denied Grievance TRCI-2018-05-021 stating that Defendant Powelson does not make the decision of how many qualified mental Health Staff are on his team, thus refusing to take corrective action, and creating a policy of inaction which encourages abuse.

52. On or about June 16, 2018 Plaintiff filed Grievance Appeal TRCI-2018-05-021A.

53. On or about August 3, 2018, Defendant Hutson denied Grievance Appeal TRCI-2018-05-021A, thus refusing to take corrective action, creating a policy of inaction which encourages abuse.

54. On or about August 19, 2018, Plaintiff filed Grievance Appeal TRCI-2018-05-021-AA.

55. On or about September 28, 2018, Defendant Bugher denied Grievance Appeal TRCI-2018-05-021-AA, thus refusing to take corrective action, creating a policy of inaction which encourages abuse.

56. On or about July 21, 2018, Plaintiff began to experience a mental health crisis. Plaintiff indicated to Defendant Andrews that he was experiencing a mental health crisis and required his PRN medication. Plaintiff requested that Defendant Andrews contact medical staff so

that Plaintiff could receive PRN medication. At the same time, Defendant Andrews and Sgt. Wiggens had discovered baby birds on the MHU recreational yard and instead of tending to Plaintiff's obvious mental health crisis and his requests for mental health care and access to his PRN medication, Defendant Andrews was preoccupied chasing the baby birds around the MHU recreational yard. Defendant Andrews ignored Plaintiff's requests for assistance. Plaintiff told Defendant Andrews, "I need my pills," but Defendant Andrews continued to ignore Plaintiff's mental health crisis. Plaintiff's altered mental state, induced by his SMI and the mental health crisis he was experiencing in addition to his inability to access the mental health care he requested, caused Plaintiff to break a keyboard and engage in self-harm by repeatedly cutting his arms.

57. After Plaintiff began cutting himself with a piece of plastic, TRCI staff responded by yelling as Plaintiff and dousing him with pepper spray. During the melee, Plaintiff blindly threw the piece of plastic away from himself.

58. As a result of being pepper sprayed, Plaintiff experienced breathing difficulties and required medical attention. Plaintiff's self-harm also required medical attention, and Plaintiff was taken to the infirmary.

59. While Plaintiff was in the infirmary, Nurse Crowder asked Plaintiff, "Why didn't you just have a CO [correctional officer] call and ask for your meds?" and indicated to Plaintiff that Defendant Andrews had never called Nurse Crowder to ask for PRN medication or mental health attention as Plaintiff had requested.

60. On or about July 21, 2018, Defendants submitted two major misconduct reports ("DRs") charging Plaintiff with two counts of Staff Assault I and one count of Disobedience of an Order I, both in connection with Plaintiff's July 21, 2018 self-harm that resulted from his mental health crisis and inability to access mental health care. The DRs were later dismissed after it was

PAGE 9 – FIRST AMENDED COMPLAINT

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

established plaintiff was experiencing an active mental health crisis in connection with his diagnosed SMI.

62. Defendants Andrews and McDonough, in addition to medical staff, failed in their required duties with deliberate indifference. MHU staff are tasked with "to prevent[ing] suicides among the inmate population and it is the policy of the Department of Corrections (DOC) to provide immediate assistance whenever an inmate demonstrates, or is reported to be at risk of self destructive behavior." OAR 291-076-0010-(2)(3).

62. Plaintiff exhibited obvious signs of extreme distress when he requested his medication. To wit, Plaintiff was pacing, withdrawn, showing outbursts of intense anger, and appeared to have difficulty thinking and concentrating.

63. On or about July 29, 2018, Plaintiff filed Grievance TRCI-2018-07-132 against Defendant Andrews for his failure to tend to Plaintiff's mental health needs while Plaintiff experienced a mental health crisis and repeatedly requested his PRN medication, causing Plaintiff to break a keyboard and engage in self-harm.

64. On or about August 24, 2018, Defendant Andrews denied Grievance TRCI-2018-07-132, stating that Defendant Andrews had not observed Plaintiff using any DBT (Dialectical Behavioral Therapy) skills during his mental health crisis on July 21, 2018, but also acknowledging that Defendant Andrews had observed Plaintiff experiencing a mental health crisis that day. Defendant Andrews further alleged that he had made three separate calls to medical staff that day to request Plaintiff be provided with his PRN medication, but that medical had been otherwise occupied and unable to provide the needed medication.

65. On or about August 30, 2018, Plaintiff filed Grievance Appeal TRCI-2018-07-132-A.

66. On or about October 2, 2018, Defendant Bowser denied Grievance Appeal TRCI-2018-07-132-A, thus refusing to take corrective action, creating a policy of inaction which encourages abuse.

67. On or about October 10, 2018, Plaintiff filed Grievance Appeal TRCI-2018-07-132-AA.

68. On or about October 31, 2018, Defendant Nooth denied Grievance Appeal TRCI-2018-07-132-AA, thus refusing to take corrective action, creating a policy of inaction which encourages abuse.

69. On or about August 10, 2018, Plaintiff filed Grievance TRCI-2018-07-139 against Defendants broadly, for failing to provide Plaintiff's PRN medication during his July 21, 2018 mental health crisis in a timely manner and alleging that the failure and breakdown in communication between MHU staff and Medical Services caused Plaintiff to experience severe harm, suffering, and pain.

70. On or about September 7, 2018, Defendant Dieter denied Grievance TRCI-2018-07-139, stating "I apologize that this happened to you but PRN Medications will be administered as soon as the Nurses are available."

71. On or about September 12, 2018, Plaintiff filed Grievance Appeal TRCI-2018-07-139-A.

72. On or about October 11, 2018, Defendant Wettlaufer denied the Grievance Appeal TRCI-2018-07-139-A, thus refusing to take corrective action, creating a policy of inaction leading to further future abuses.

73. On or about October 17, 2018, Plaintiff filed Grievance Appeal TRCI-2018-07-139-AA.

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

74. On or about November 30, 2018, Defendant Bugher denied Grievance Appeal TRCI-2018-07-139-AA, thus refusing to take corrective action and creating a policy of inaction encouraging future abuse.

75. On or about June 23, 2020, Plaintiff and other individuals confined to the MHU requested mental health treatment from mental health staff, but mental health staff refused to enter the MHU citing fear of COVID-19 exposure. Unable to access necessary treatment, multiple individuals confined to the MHU engaged in self-harm and suicide attempts.

76. Another inmate on Plaintiff's unit, JG, engaged in self-harm that resulted in significant blood loss and contamination of his cell and the unit. The smell of blood caused Plaintiff's already diminished mental state to decompensate into a full-blown mental health crisis. Plaintiff experienced severe mental health symptoms over the following days, but mental health staff still refused to tend to Plaintiff's mental health needs.

77. Defendants have displayed deliberate indifference in refusing to adequately and properly care for Plaintiff's serious mental health needs consistent with the medical standard of care, as evidenced by Plaintiff's multiple suicide attempts and ODOC's continued punishment for the symptoms Plaintiff exhibits as a result of his SMI, including placement in disciplinary segregation; repeated use of pepper spray; and denial of adequate access to mental health treatment, including psychiatrists, medications, and treatment programs.

///

///

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

# V. CAUSES OF ACTION

# FIRST CLAIM FOR RELIEF

# (42 U.S.C. 1983)

**(Count 1: Failure to provide adequate and proper mental health care and treatment)**

**(Against Bugher, Hutson, Nooth, Bowser, Powelson, McDonough, Young, Jackson, Harris, Houston, Andrews-Schranz, Dieter, Wettlaufer, Johnston, and Eynon)**

78. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

79. As a state prisoner, Plaintiff has the right to receive adequate and proper mental health care and treatment while incarcerated as guaranteed by the Eight Amendment. Correspondingly, Defendants are responsible for providing Plaintiff with adequate and proper mental health care, therapy, and medication, consistent with the community standard of care.

80. Defendants are and were aware of Plaintiff's SMI, diagnosis, and course of treatment. Defendants are and were further aware that failure to provide adequate treatment for Plaintiff poses serious medical harm to Plaintiff and potentially to others.

81. Defendants have denied Plaintiff access to necessary health care, specifically for his SMI needs, and knowingly disregarded excessive risks to Plaintiff's health and wellbeing by refusing to take corrective actions and allowing and condoning TRCI staff members to interfere with and prevent Plaintiff's access to mental health treatment.

82. Defendants demonstrate ongoing, systemic deliberate indifference to Plaintiff's SMI, and have deprived Plaintiff of his right to receive adequate and proper mental health care including but not limited to: denial of mental health treatment and medication; exposure to excessive pepper spray; excessive disciplinary confinement; allowing untrained staff to work on the TRCI Mental Health Unit; ignoring Plaintiff's obvious SMI crises, including self-harm and

suicide attempts; denial of fair access to impartial unbiased grievance system; inadequate access to proper numbers of qualified behavioral health staff and psychiatrists; and allowing non-medical/non-mental health staff to improperly influence the provision of Plaintiff's mental health care while confined in MHU.

83. Defendants' actions have been malicious, deliberate, intentional, and embarked upon with knowledge of or in conscious disregard of, the harm that would be inflicted on Plaintiff. These actions caused direct harm to Plaintiff. As the result of this intentional conduct, Plaintiff is entitled to punitive damages against Defendants in their individual capacities to deter others from similar conduct and punish Defendants for such actions.

84. Defendants violated rights held by Plaintiff which were clearly established, and no reasonable official similarly situated to Defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified statutory immunity from suit or liability.

85. As a direct and proximate result of the actions described herein, Plaintiff sustained actual damages, including inducement of suicide attempts, mental anguish and torture, psychological trauma, worsening of major depression, suicide ideation, confinement in disciplinary segregation, excessive exposure to pepper spray, loss and deprivation of Plaintiff's property.

86. All of these claims mentioned caused Plaintiff pain, as well as mental, emotional and physical injuries. Plaintiff is entitled to money damages to compensate him for these injuries.

87. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which he seeks.

88. Defendants' acts were willful and malicious and done with reckless indifference to

PAGE 14 – FIRST AMENDED COMPLAINT

**Law Offices of Daniel Snyder**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

89. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**(Count 2: Confinement in Inhumane Conditions)**

**(Against Bugher, Hutson, Nooth, Bowser, Powelson, McDonough, Young, Jackson, Harris, Houston, Andrews-Schranz, Dieter, Wettlaufer, Johnston, and Eynon)**

90. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

91. Defendants denied Plaintiff access to adequate and proper mental health care; subjected Plaintiff to excessive disciplinary confinement for SMI-related issues; disciplined Plaintiff for symptoms of his SMI, including DRs and exposure to excessive pepper spray; failed to properly train staff to work with prisoners diagnosed with SMI; denied access to adequate numbers of trained mental health staff and psychiatrists; allowed non-medical/non-mental health staff to improperly influence the provision of Plaintiff's mental health care; and refused to take corrective action. Defendants' actions exhibit deliberate indifference and create a policy of inaction that led to constitutional violations and retaliation against Plaintiff.

92. Plaintiff has the right not to be subjected to Cruel and Unusual Punishment while in custody. Defendants' actions violate the Eighth and Fourteenth Amendments against Cruel and Unusual Punishment. As the result of Defendants' intentional conduct, Plaintiff is entitled to punitive damages against Defendants in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

93. Defendants violated rights held by Plaintiff which were clearly established, and no reasonable official similarly situated to Defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory

immunity from suit or liability.

94. As a direct and proximate result of the actions described herein, Plaintiff sustained actual damages, including inducement of suicide attempts, mental anguish and torture, psychological trauma, worsening of major depression, suicide ideation, confinement in disciplinary segregation, and excessive exposure to pepper spray, loss and deprivation of Plaintiff's property.

95. All of these claims mentioned caused Plaintiff pain, as well as mental, emotional and physical injuries. Plaintiff is entitled to money damages to compensate him for these injuries.

96. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which he seeks.

97. Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

98. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### (Americans with Disabilities Act - 42 U.S.C. § 12101 *et seq*)

### (Against ODOC)

99. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

100. Defendant ODOC is a "public entity" under 42 U.S.C. § 12131(1)(B).

101. Plaintiff suffers from physical and mental health disabilities that interfere with his major life activities, including major depression, suicide ideation and ADHD.

102. Plaintiff is a "qualified individual with a disability." At all relevant times, Defendant was aware of Plaintiff's disability.

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

103. Defendants have damaged Plaintiff in violation of 42 U.S.C. §12132 and its accompanying regulations by committing the following discriminatory acts or practices with deliberate indifference:

104. Defendants subjected Plaintiff to discrimination on the basis of his disabilities and were deliberately indifferent to the need to accommodate Plaintiff's disabilities. Said discrimination effectively deprived Plaintiff of the benefits, services, programs, and activities, offered by ODOC to similarly situated inmates, including mental health treatment, medication, adequate access to fair impartial grievance system, adequate access to mental health providers, and proper staffing on the MHU unit.

105. Defendant harmed Plaintiff by failing to provide him with its services as alleged above.

106. Defendant acted with deliberate indifference to Plaintiff's rights and thus Plaintiff is entitled to money damages.

107. Plaintiff is entitled to injunctive relief, including, but not limited to, an order prohibiting Defendant from discriminating against plaintiffs and other persons with disabilities and an order mandating full compliance with Title II of the ADA.

108. Plaintiff is entitled to a declaration that the Defendant violated Title II of the ADA.

109. Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

**THIRD CLAIM FOR RELIEF**

**(Section 504 of the Rehabilitation Act of 1973)**

**(Against ODOC)**

110. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

**Law Offices of Daniel Snyder**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

111. Plaintiff is a qualified individual with a disability or handicap under the Rehabilitation Act.

112. Plaintiff is otherwise qualified to receive the benefit of the services made available to other inmates at TRCI.

113. At all times material, Defendant was and is a recipient of federal financial assistance for its programs and activities.

114. Defendant's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant's services because of his disability.

115. Defendant ODOC's conduct showed deliberate indifference to Plaintiff's rights.

116. Defendant sustained emotional distress and damages due to Defendant's violation of the Rehabilitation Act.

117. Plaintiff is entitled to injunctive relief, including, but not limited to, an order prohibiting Defendant from discriminating against Plaintiffs and other persons with disabilities and an order mandating full compliance with Section 504 of the Rehabilitation Act.

118. Pursuant to Section 505 of the Rehabilitation Act, Plaintiffs are entitled to money damages and an award of attorney fees and costs.

## VI. PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

A. An award of damages in an amount to be proven at trial to compensate plaintiff for his pain, as well as mental, emotional and physical injuries;

B. An award of punitive damages in an amount to be proven at trial;

C. Plaintiff's reasonable attorneys' fees, costs, disbursements and expenses;

Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

D. A declaratory judgment that the acts and omissions described herein violated Plaintiff's civil rights;

E. Injunctive relief narrowly tailored per the Prison Litigation Reform Act (PLRA), requiring TRCI to:

    a) Staff adequate numbers of qualified mental health staff and psychiatrists in proportion to the MHU inmate population at TRCI;

    b) Refrain from punishing SMI inmates for SMI crisis with DRs and placement in disciplinary segregation housing at TRCI; and

    c) Require all staff on the MHU at TRCI to be properly screened and trained before working on MHU; and

F. for such relief as the law permits and Justice requires.

**Plaintiff demands a trial by jury.**

DATED: April 20, 2021

          LAW OFFICES OF DANIEL SNYDER

          *s/ John Burgess*
          John Burgess, OSB No. 106498
          johnburgess@lawofficeofdanielsnyder.com
          Telephone: (503) 241-3617
          Facsimile: (503) 241-2249
          Of Attorneys for Plaintiff