IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ROBERT EMERY,**

    Plaintiff,

v.

**OREGON DEPARTMENT OF CORRECTIONS,** an agency of the State of Oregon; **JOE BUGHER; CHRISTY HUTSON; MARK NOOTH; TROY BOWSER; RICHARD POWELSON; PATRICK MCDONOUGH; RICHARD YOUNG; KEVIN JACKSON; CAL HARRIS; ANNETTE HOUSTON; MICHAEL ANDREWS-SCHRANZ; CYNTHIA DIETER; DOROTHY WETTLAUFER; SHANNON JOHNSTON;** and **ARNELL EYNON,**

    Defendants.

Case No. 2:19-cv-01070-MC

**OPINION AND ORDER**

**MCSHANE, District Judge**:

Plaintiff Robert Emery, an inmate in the custody of the Oregon Department of Corrections ("ODOC"), brings suit pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. Plaintiff alleges that Defendants failed to provide adequate and proper mental health care and treatment, confined Plaintiff in inhumane conditions, and discriminated against Plaintiff based on his disabilities. Defendants move for summary judgment on all claims. Defs.' Mot. Summ. J., ECF No. 85 ("Defs.' Mot."). The Court finds that a genuine issue of material fact exists regarding Plaintiff's First Claim for Relief against Defendant McDonough. Because Plaintiff fails to raise a genuine issue of material fact with

1 – Opinion and Order

respect to the remaining claims, Defendants' Motion for Summary Judgment (ECF No. 85) is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff is an inmate housed in the Mental Health Unit at the Two Rivers Correctional Institution ("TRCI"). Pl.'s First Amend. Compl. ¶ 26, ECF No. 68 ("FAC"). Plaintiff suffers from severe mental illness, including Major Depressive Disorder, Suicidal Ideation, Attention Deficit and Hyperactivity Disorder, and unspecified Personality Disorder. *Id.* ¶ 24. Plaintiff has a history of self-harm and attempted suicide. FAC ¶ 24; Pl.'s Resp. Defs.' Mot. Summ. J. 2, ECF No. 88 ("Pl.'s Resp."). Plaintiff was prescribed a per-request of nurse ("PRN") medication "to address sudden onset of acute anxiety and suicidal ideation." Pl.'s Resp. 2. Plaintiff's claims arise out of two incidents of self-harm while housed at TRCI.

Plaintiff alleges that on April 25, 2018, Defendant McDonough "engaged in [a] hostile and confrontational demeanor toward Plaintiff, triggering a [severe mental health] crisis in Plaintiff." FAC ¶ 28. Plaintiff requested access to his PRN medication, and Defendant McDonough allowed Plaintiff to go to the medication line. *Id.* ¶¶ 28–29. However, Plaintiff "realized it was too early for him to receive his next dose of PRN medication" and instead returned to his cell. *Id.* ¶ 29. While in his cell, Plaintiff "attempted suicide by cutting both arms from wrist to elbow." *Id.* Plaintiff claims that immediately after he cut both arms, "Defendant McDonough walked by [Plaintiff's cell] while performing a 'tier check,' looked into Plaintiff's cell where Plaintiff and the cell were covered in blood, smirked and then walked on, ignoring the incident." *Id.* ¶ 30. A response team was called only after a different correctional officer saw the

---

[1] The Court views the facts in the light most favorable to Plaintiff, the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

blood in Plaintiff's cell. *Id.* Following the events on April 25, 2018, Plaintiff filed a series of grievances and grievance appeals, which were denied by various ODOC personnel. *Id.* ¶¶ 31–55.

On July 21, 2018, Plaintiff again began to experience a mental health crisis. *Id.* ¶ 56. Plaintiff informed Defendant Andrews-Schranz about his mental health crisis and requested his PRN medication. *Id.* Defendant Andrews-Schranz contacted medical staff but was informed that no staff was available to escort Plaintiff. Pl.'s Resp. 6. Around this time, Defendant Andrews-Schranz and another correctional officer became preoccupied with clearing baby birds out of the recreational yard. FAC ¶ 56. Meanwhile, Plaintiff's mental state decompensated further; Plaintiff broke a computer keyboard and used the broken plastic to repeatedly cut his arms. FAC ¶ 56; Pl.'s Resp. 7. In response to Plaintiff's ongoing self-harm, TRCI staff sprayed Plaintiff with pepper spray. FAC ¶ 57. Plaintiff was then taken to the infirmary for treatment. *Id.* ¶ 58. Following these events, Plaintiff again filed a series of grievances and grievance appeals, which were denied by various ODOC personnel. *Id.* ¶¶ 63–74.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial."

3 – Opinion and Order

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Plaintiff's First Claim for Relief

Plaintiff's First Claim for Relief contains two counts, each against Defendants Bugher, Hutson, McDonough, Andrews-Schranz, Wettlaufer, and Johnston.[2] FAC 13–16. Count one alleges that these six Defendants violated Plaintiff's Eighth Amendment rights by denying him "adequate and proper mental health care and treatment" while incarcerated. *Id.* at 13. Count two alleges that Plaintiff's Eighth and Fourteenth Amendment rights were violated through "[c]onfinement in [i]nhumane [c]onditions." *Id.* at 15.

To sustain an Eighth Amendment claim based on prison medical treatment, Plaintiff must establish the existence of "a serious medical need" and show that the "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."). The standard of deliberate indifference also applies to claims alleging unconstitutional conditions of confinement. *Helling v. McKinney*, 509 U.S. 25, 30 (1993) ("[W]here the claim alleges inhumane conditions of confinement or failure to attend to a prisoner's medical needs, the standard for that state of mind is the 'deliberate indifference' standard.").

---

[2] Plaintiff agrees that summary judgment should be granted for Defendants Nooth, Bowser, Powelson, Young, Jackson, Harris, Houston, Dieter, and Eynon. Pl.'s Resp. 2.

4 – Opinion and Order

Deliberate indifference may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Deliberate indifference requires both an objective risk of harm and a subjective awareness of that harm and "may appear when prison officials deny, delay[,] or intentionally interfere with medical treatment . . . ." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, negligent delays do not violate the Constitution. *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1988).

Liability under § 1983 requires a showing of personal participation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### A.     Serious Medical Need

Plaintiff has met his burden of showing a serious medical need. A prisoner has a serious medical need if "failure to treat [the] prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (citation omitted). The Ninth Circuit has recognized that "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010).

Here, it is undisputed that Plaintiff has severe mental illness and engaged in self-harm on both April 25, 2018, and July 21, 2018. FAC 24; Defs.' Answer Pl.'s Am. Compl. ¶ 5, ECF No. 69. Plaintiff has provided sufficient evidence such that a reasonable jury could find Plaintiff was at a heightened risk for suicide and attempted suicide on both dates.

### B. Deliberate Indifference

For purposes of analyzing Plaintiff's First Claim for Relief, Defendants are best divided into the following three groups: (a) Defendant McDonough; (b) Defendant Andrews-Schranz; and (c) Defendants Hutson, Bugher, Wettlaufer, and Johnston.

#### 1. Defendant McDonough

Plaintiff alleges Defendant McDonough, a correctional officer at TRCI, exhibited deliberate indifference to Plaintiff's serious medical needs on April 25, 2018, by failing to administer aid after discovering Plaintiff had attempted suicide in his cell. FAC ¶ 30. Plaintiff alleges that Defendant McDonough "looked into Plaintiff's cell where Plaintiff and the cell were covered in blood, smirked and then walked on, ignoring the incident." *Id.* Defendants contend that Defendant McDonough did not observe "anything out of the ordinary" during his inspection of Plaintiff's cell. Defs.' Mot. 4.

Whether Defendant McDonough had the requisite knowledge of Plaintiff's serious medical need is a question of fact. *Farmer*, 511 U.S. at 842. Defendants have failed to meet their burden of proving that no genuine issue of material fact exists for this issue. Therefore, summary judgment is denied on this claim.

#### 2. Defendant Andrews-Schranz

Plaintiff also alleges Defendant Andrews-Schranz, a correctional officer at TRCI, exhibited deliberate indifference to Plaintiff's serious medical needs on July 21, 2018, by failing to provide constitutionally adequate care prior to, and during, an incident of self-harm. FAC ¶¶ 56–59; Pl.'s Resp. 6–8.

Defendants deny these allegations and assert that Defendant Andrews-Schranz took affirmative measures to address Plaintiff's mental health needs, including contacting medical

staff to get Plaintiff access to his PRN medication, notifying a supervisor about the situation, conversing with Plaintiff, and continuing to observe Plaintiff. Defs.' Mot. 4–5, 9. Defendants also offer that once Defendant Andrews-Schranz became aware that Plaintiff was escalating, he responded immediately. *Id.* at 5, 9. Plaintiff concedes that Defendant Andrews-Schranz did contact medical staff, but Plaintiff was unable access his PRN because staff was not available to provide an escort. Pl.'s Resp. 6, 8. Nonetheless, Plaintiff maintains that Defendant Andrews-Schranz "ignored him" and "deliberately disregarded" indications that Plaintiff was experiencing a mental health crisis. *Id.* at 12.

Plaintiff has not provided sufficient evidence to support the allegation that Defendant Andrews-Schranz deliberately ignored, disregarded, or otherwise purposefully failed to respond to Plaintiff's medical needs. On this record, no reasonable jury could find that Defendant Andrews-Schranz acted with deliberate indifference toward Plaintiff. Accordingly, summary judgment is granted for Defendant Andrews-Schranz on this claim.

    **3.**     **Defendants Bugher, Hutson, Wettlaufer, and Johnston**

Plaintiff alleges that Defendant Hutson, as Behavioral Health Services Administrator for ODOC, Defendant Bugher, as Health Services Administrator of ODOC, Defendant Wettlaufer, as Medical Services Administrator at TRCI, and Defendant Johnston, as Medical Service Manager at TRCI, are "responsible for the provision of mental health services at TRCI generally and the unit where Plaintiff was housed specifically" and are therefore liable for deliberate indifference under § 1983. FAC ¶¶ 10–11, 21–22; Pl.'s Resp. 13. Plaintiff alleges that Defendants Bugher et al. exhibited "ongoing, systemic deliberate indifference" by failing to provide adequate and proper mental health care and treatment. FAC ¶¶ 24–77, 82. Plaintiff does not allege that Defendants Bugher et al. directly denied medical treatment, but only effectively

did so in their supervisory capacity. Defendants contend that Defendants Bugher et al. "were not personally involved in any alleged constitutional deprivation." Defs.' Mot. 10.

Plaintiff has failed to provide sufficient evidence that Defendants Bugher et al. personally directed or knew of any constitutional violations carried out by their subordinates. Summary judgment is granted for Defendants Bugher et al. on these claims.

## II.     Plaintiff's Second and Third Claims for Relief

Plaintiff alleges that Defendant ODOC discriminated against him based on his disability, in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973.. FAC ¶¶ 99–109; 42 U.S.C. §§ 12101–213; 29 U.S.C § 794. To establish a prima facie case of disability discrimination, Plaintiff must show:

> (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citations and internal quotation marks omitted); *see also Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the [ADA] . . . .").

Furthermore, a public entity may be liable under these statutes "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017). To prove deliberate indifference in this context, a plaintiff must show that the defendant had "knowledge that a harm to a federally protected right [was] substantially likely, and [failed] to act upon that . . . likelihood." *Id.* at 950–51 (quoting *Duvall*, 260 F.3d at 1139).

8 – Opinion and Order

Plaintiff fails to make out a prima facie case of disability discrimination under either the ADA or the Rehabilitation Act. "[T]he ADA prohibits discrimination because of disability, not inadequate treatment for disability" or even "fail[ure] to attend to the medical needs of its disabled prisoners." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Plaintiff alleges that Defendant ODOC has "denied treatment altogether" based on Plaintiff's disabilities. FAC ¶¶ 104–05; Pl.'s Resp. 16–17. However, Plaintiff's own complaint does not support this allegation. Plaintiff had recently received his PRN prior to the April self-harm incident and received medical care immediately following the July self-harm incident. FAC ¶¶ 29, 58.

No reasonable jury could find that Defendant ODOC violated Plaintiff's rights under the ADA or the Rehabilitation Act; summary judgement is granted for Defendants on these claims.

### III.   **Qualified Immunity**

Defendants also raise qualified immunity as grounds for dismissal of all claims. Defs.' Mot. 14–16. Qualified immunity can shield a defendant from liability for an alleged constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity is applicable, the court must consider: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, show defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has impressed upon courts not to be overly generalized or excessively specific in defining what it means for a right to be "clearly established." *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

The Court need not address qualified immunity for claims dismissed on other grounds in this opinion. As addressed above, the record could support a finding that Defendant

9 – Opinion and Order

McDonough's conduct violated Plaintiff's Eighth Amendment right; thus, the pertinent question is whether the right was clearly established. To be clearly established, the unlawfulness of the alleged conduct must be apparent under preexisting law such that a defendant had "fair warning" that the conduct was unconstitutional. *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002); *Hope v. Pelzer*, 536 U.S. 730 (2002).

Any reasonable officer in Defendant McDonough's position would be aware that failure to administer aid to a severely wounded inmate is a violation of the law. ODOC administrative rules state if an ODOC staff member discovers a suicide in progress, the staff member must "call for assistance," follow "[e]mergency first aid procedures . . . until Medical Services staff arrive," and continue first aid procedures "until relieved by Medical Services staff regardless of belief that the inmate is no longer alive." OR. ADMIN. R. 291-076-0030(9) (2008). The Court concludes that qualified immunity is not applicable to Defendant McDonough.

## IV.    Injunctive Relief

Plaintiff seeks injunctive relief in the following form:

a) Staff adequate numbers of qualified mental health staff and psychiatrists in proportion to the MHU [Mental Health Unit] inmate population at TRCI;
b) Refrain from punishing SMI [severe mental illness] inmates for SMI crisis with [major misconduct reports] and placement in disciplinary segregation housing at TRCI; and
c) Require all staff on the MHU at TRCI to be properly screened and trained before working on MHU[.]

FAC 19. Defendants contend that Plaintiff's requested injunctive relief does not conform with the Prison Litigation Reform Act ("PLRA"). Defs.' Mot. 16.

The PLRA restricts courts from "grant[ing] or approv[ing] relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000). The injunctive relief sought by Plaintiff does not conform to the requirements of the PLRA and is not appropriate considering the sole remaining claim. In

10 – Opinion and Order

addition, Plaintiff has failed to respond to Defendants' requested denial of injunctive relief. For these reasons, Plaintiff's requested injunctive relief will be denied.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 85) is DENIED with respect to Plaintiff's First Claim for Relief against Defendant McDonough and GRANTED in all other respects.

IT IS SO ORDERED.

DATED this   18th   day of February 2022.


                                                /s/ Michael J. McShane
                                                Michael J. McShane
                                                United States District Judge